UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT CARROLL,

                                  **Plaintiff,**

   vs.                                                                        1:21-CV-1197
                                                                                     (MAD/DJS)

**THE UNITED STATES OF AMERICA,**

                                  **Defendant.**
_____

**APPEARANCES:**                                                  **OF COUNSEL:**

**ROBERT CARROLL**
Post Office Box 201
Connelly, New York 12417
Plaintiff, *Pro Se*

**OFFICE OF THE UNITED STATES ATTORNEY**    **KAREN F. LESPERANCE, AUSA**
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207-2924
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

    *Pro se* Plaintiff Robert Carroll ("Plaintiff") commenced this action under the Federal Tort Claims Act ("FTCA") on November 2, 2021, alleging medical malpractice and negligence in connection with care and treatment that he received at the Albany Stratton Veterans Affairs Medical Center ("VAMC"). *See* Dkt. No. 1. Plaintiff alleges that Defendant failed, on two occasions in 2015 and 2017, respectively, to diagnose his deep venous thrombosis ("DVT") which ultimately resulted in "serious and permanent injuries." *Id.* at ¶¶ 15-24. Plaintiff seeks "[m]edical

1

expenses, lost wages, pain and suffering, future impairment, and loss of enjoyment of life totaling $4,000,000," to recover any "[c]osts and fees incurred in this civil action," and any "additional relief at law or in equity that this Court may deem proper." *Id.* at 6. Currently before the Court are Defendant's motion to dismiss, Plaintiff's response memorandum of law in opposition, and Defendant's reply. *See* Dkt. Nos. 17, 22, 23. For the reasons set forth below, the Court grants Defendant's motion to dismiss in its entirety and dismisses Plaintiff's complaint with prejudice.

## II. BACKGROUND

On August 11, 2015, Plaintiff visited VAMC's Emergency Department complaining of swelling of his right leg. *See* Dkt. No. 1 at ¶ 15. Plaintiff was treated with antibiotics and discharged. *See id.* Plaintiff returned to the Emergency Department "on or about" March 27, 2017, again complaining of "a history of chronic intermittent right leg swelling." *Id.* at ¶ 16. Plaintiff was discharged with no further treatment or antibiotics. *See id.* At his annual physical on November 14, 2017, Plaintiff requested that his primary care doctor, Dr. Piet, "order a test to check for a chronic deep venous thrombosis." *Id.* at ¶ 21. Dr. Piet then ordered a Duplex ultrasound which was performed on November 27, 2017. *See id.* at ¶ 22. The test showed that Plaintiff had extensive DVT of the right thigh; accordingly, he was started on a year-long course of anticoagulant medication. *See id.* at ¶ 23. On January 23, 2019, Plaintiff underwent a second Duplex ultrasound and on February 19, 2019, Plaintiff was informed that his condition showed no improvement and that, "further anticoagulation [therapy] would not be helpful, and that [the DVT] was permanent." *Id.*

Plaintiff filed an administrative claim with the Department of Veterans Affairs ("VA") on January 17, 2021, asserting the VA at the Stratton Veterans Hospital in Albany, New York, had failed "to properly and timely diagnose DVT of the right thigh [which] has resulted in progression

of [Plaintiff's] condition to such a degree that it is no longer treatable and has resulted in disfigurement, anxiety, disability and loss of earnings." *Id.* at 7.  On May 27, 2021, the VA denied his claim stating that, "[their] review concluded there was no negligent or wrongful act on the part of an employee of the [VA] acting within the scope of employment that caused compensable harm." *Id.* at 8.  Plaintiff then commenced this action on November 2, 2021, asserting "negligence and professional malpractice in connection with medical care provided to Plaintiff by [Defendant]." *Id.* at ¶ 1.  Plaintiff further argued that Defendant "failed on both … emergency room visits to order the appropriate tests to determine if [P]laintiff's signs and symptoms were a result of [DVT] of the right leg," and in doing so acted "carelessly and negligently" and "not in accordance with good and accepted medical practice." *Id.* at ¶¶ 17, 24.

On April 4, 2023, Defendant moved to dismiss Plaintiff's complaint, arguing that Plaintiff's claim is barred under 28 U.S.C. § 2401(b) because Plaintiff failed to submit his administrative claim within two years of the date on which he learned of the alleged failure to diagnose his chronic DVT.  *See* Dkt. No. 17-1 at 6.  On April 24, 2023, Plaintiff submitted a response memorandum in opposition arguing that his claim was timely as he filed it "within two years from the date that cause of action accrued on February 19, 2019, the date continuous care for the same injury and at the same VA hospital was terminated." Dkt. No. 22 at 2 (emphasis omitted).  On May 2, 2023, Defendant submitted a reply memorandum asserting that Plaintiff's arguments fail to "cure the untimeliness of his claim."  Dkt. No. 23 at 2.

### III. DISCUSSION

A.  **Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v.*

*Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading even if they are neither physically attached to, not incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face."  *Id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (quoting [*Twombly*, 550 U.S.] at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed."  *Id.* at 570.

"[I]n a *pro se* case, the court must view the submission by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

**B.   The FTCA**

The FTCA provides a limited waiver of the United States' sovereign immunity for "certain torts committed by federal employees," *FDIC v. Meyer*, 510 U.S. 471, 475-77 (1994), and "grants the federal district courts jurisdiction over a certain category of claims" including, "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment …." 28 U.S.C. § 1346(b)(1).  However, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing … of notice of final denial of the claim." 28 U.S.C. § 2401(b).

"[A]ccrual of a medical malpractice claim 'may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause.'" *Torres v. United States*, 612 Fed. Appx. 37, 40 (2d Cir. 2015) (quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)).  This "'diligence-discovery' standard" permits a claim to accrue when the plaintiff, "knows or should know, enough to protect himself by seeking legal advice." *Id.* (quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 142 (2d Cir. 2011)).  However,

5

this standard only applies to FTCA claims in "exceptional" cases where "a plaintiff's injury is 'unknown,' [or] 'inherently unknowable at the time it occurs ....'" *Siegel v. La Guardia Cmty. Coll.*, No. 05-CV-320, 2006 WL 1084780, *3 (E.D.N.Y. Apr. 25, 2006). Therefore, the standard only applies to a plaintiff who is "blamelessly ignorant of the existence or cause of his injury." *Anthony v. Consolidated Rail Corp.*, No. 96-CV-1643, 1998 WL 696288, *6 (N.D.N.Y. Sept. 30, 1998) (quoting *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982)).

In the present matter, Plaintiff argues that "[he] did not have sufficient knowledge to suspect malpractice until the date of the first Ultrasound (US) on November 27, 2017, which detected a deep venous thrombosis (DVT)." Dkt. No. 22 at 3. Defendant agrees, stating that:

> as of November 27, 2017, Plaintiff was aware of the diagnosis, and therefore aware of an alleged failure to diagnose the DV at the earlier emergency room visits. As such, he had knowledge of the critical facts of both his injury and its cause as of that date, and his claim therefore accrued on that date.

Dkt. No. 17-1 at 5. Under the discovery rule, Plaintiff's claim accrued on November 27, 2017, when he learned of his DVT diagnosis; therefore, he would have had to file an administrative claim within two years of that date, by November 27, 2019. *Torres*, 612 Fed. Appx. at 40. Plaintiff failed to file within two years, and rather filed his administrative claim on January 17, 2021. Consequently, his claim is barred under 28 U.S.C. § 2401(b).

C.     **Equitable Tolling**

"Notwithstanding the strict application of the statute of limitations," equitable tolling allows a filing "to be deemed timely … where a litigant can show that he has been pursuing his rights diligently and that some extraordinary circumstances stood in his way." *Reape v. Colvin*, No. 1:13-CV-1426, 2015 WL 275865, *3 (N.D.N.Y. Jan. 22, 2015) (quoting *Torres v. Barnhart*, 417 F.3d 276, 279 (2d Cir. 2005) (internal quotation omitted)). In other words, the party seeking equitable tolling must show "both extraordinary circumstances and due diligence." *Barnhart*, 417

F.3d at 279. "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011). "It is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline." *Id.* Moreover, equitable tolling is "not a cure-all," *Wallace v. Kato*, 549 U.S. 384, 396 (2007), and only appropriate in "rare and exceptional circumstances." *Zerilli-Edelglass v. N.Y. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (internal citations and quotations omitted).

Plaintiff argues that "the FTCA's statute of limitations is not jurisdictional and may be subject to equitable tolling." *See* Dkt. No. 22 at 3. Defendant contends that Plaintiff "fails to provide any facts or legal argument to establish his entitlement to equitable tolling … [and] did nothing to diligently pursue his rights, waiting more than three years to submit an [administrative claim]." Dkt. No. 23 at 3-4. Defendant further asserts that Plaintiff cannot "establish an extraordinary circumstance that prevented him from timely filing an administrative claim." *Id.* at 4.

Regarding the first element, Plaintiff failed to act with reasonable diligence as he was diagnosed with DVT in November 2017 but waited more than three years to file an administrative claim. *See* Dkt. No. 1 at 7; Dkt. No. 23 at 2-3; *see also Rochester v. Sixth Precinct Police Station*, No. 03-CV-0856, 2008 WL 11410078, *4 (E.D.N.Y. Feb. 28, 2008) (holding that a *pro se* plaintiff's failure to pursue claims for over three years without explanation "vitiates any equitable tolling" for lack of reasonable diligence). Regarding the second element, Plaintiff also failed to provide facts establishing that he was subject to any "extraordinary" circumstances that prevented them from filing an administrative claim in a timely manner. *See* Dkt. No. 22 at 3. Accordingly,

7

Plaintiff is not entitled to equitable tolling. *See Hardie v. United States*, 501 F. Supp. 3d 152, 162 (E.D.N.Y. 2020) (holding that equitable tolling is "not warranted" when a plaintiff fails "to point to facts showing an extraordinary circumstance within the two years following the accrual that prevented him from submitting the require documents"); *see also Abdoulaye v. Cimaglia*, No. 15-CV-4921, 2018 WL 1890488, *4 (S.D.N.Y. Mar. 30, 2018) (noting that although the plaintiff "d[id] not argue that his claim should benefit from equitable tolling … [a] potentially meritorious claim by a *pro se* litigant, even when coupled with judicial empathy, but without more, does not amount to an extraordinary circumstance sufficient to support equitable tolling").

D.   **Continuous Treatment Doctrine**

The continuous treatment doctrine allows a patient to "delay filing a lawsuit so that he can continue with corrective treatment and avoid undermining the continuing trust in the doctor-patient relationship." *Doane v. United States*, 369 F. Supp. 3d 422, 444 (N.D.N.Y. 2019).  The doctrine permits a cause of action for medical malpractice to be tolled "where there is a continuous treatment related to the original condition or complaint." *Gonzalez v. Wright*, 665 F. Supp. 2d 334, 355 (S.D.N.Y. 2009).  "In other words, the statute of limitations for medical malpractice is tolled against a single doctor until the last date that doctor treated the plaintiff for the same condition." *Id.*  Plaintiff argues that because he "was continually treated at the same VA Hospital for a DVT[,] … his cause of action accrued on or soon after [February 19, 2019]," when he discontinued the anticoagulant medication prescribed to him after his ultrasound on November 27, 2017.  Dkt. No. 22 at 3-4; *see* Dkt. No. 1 at ¶¶ 22-23.

Defendant argues that the doctrine does not apply "where a patient receives improper care from one government physician and is thereafter treated by others." *Dundon v. United States*, 559 F. Supp. 469, 473 (E.D.N.Y. 1983) (citing *Camire v. United States*, 535 F.2d 749, 750 (2d Cir.

8

1976); *DeGirolamo v. United States*, 518 F. Supp. 778, 781 (E.D.N.Y. 1981)).  Here, Plaintiff argues that because he "was prescribed daily oral anti-coagulants continuously for one year … his cause of action accrued on or soon after 2/19/2019 when the continuous treatment ended."  Dkt. No. 22 at 3-4 (emphasis omitted).  However, Plaintiff fails to identify any providers other than Dr. Piet or allege that he was continuously treated by the same government physician after his emergency department visits.  *See* Dkt. No. 1; Dkt. No. 22 at 3-5.  Therefore, "the fact that [Plaintiff] remained under the care of different physicians employed by the United States [does] not in and of itself prevent him from diligently seeking advice concerning his injury or legal rights."  *Dundon*, 559 F. Supp. at 473.  Accordingly, application of the continuous treatment doctrine would be inappropriate.

E.      **Continuing Wrongs Doctrine**

The continuing wrongs doctrine is "an exception to the general rule that the statute of limitations runs from the time of the breach though no damage occurs until later."  *Speedfit LLC v. Lifecore Fitness, Inc.*, No. 22-CV-3140, 2023 WL 199595, *4 (S.D.N.Y. Jan. 17, 2023) (quotation omitted).  Under the doctrine, "certain wrongs are considered to be continuing wrongs, and the statute of limitations, therefore, runs from the commission of the last wrongful act."  *Perkins v. Rome Mem'l Hosp.*, No. 6:20-CV-0196, 2021 WL 1549987, *2 (N.D.N.Y. Apr. 19, 2021) (quoting *Leonhard v. United States*, 633 F.2d 599, 613 (2d Cir. 1980)).  Therefore, under the doctrine, accrual of a claim begins on the date of the last wrongful act.  *See id.*  However, it is currently unclear whether the doctrine is applicable in medical malpractice cases under the FTCA.  *See Powell v. Quay*, No. 18-CV-5378, 2023 WL 1994873, *2 (E.D.N.Y. Feb. 14, 2023) (noting that "the question of whether the continuing violation doctrine may apply to toll the FTCA statute

of limitations, [is] an issue not yet decided in this Circuit") (citing *Syms v. Olin Corp.*, 408 F.3d 95, 108 (2d Cir. 2005)).

Here, Plaintiff alleges that the last wrongful act occurred on March 27, 2017. *See* Dkt. No. 1 at ¶¶ 16-18, 24. Defendant agrees, arguing that, while it is unclear whether the doctrine may be applied to FTCA cases, Plaintiff's claims would have accrued in March of 2017, making Plaintiff's January 2021 claim untimely. Dkt. No. 23 at 6. Under the continuing wrongs doctrine, Plaintiff would have had to file an administrative claim prior to March 27, 2019, for it to be timely. *See* Dkt. No. 1 at ¶ 24. Given that Plaintiff failed to submit a claim prior to March 27, 2019, his claim is untimely regardless of whether the doctrine is applied. Accordingly, the Court need not address the applicability of the doctrine.

Plaintiff has failed to establish that he is entitled to tolling of his claim or any other exception to the general rules that govern the statute of limitations under the FTCA. Accordingly, Plaintiff's claim is "forever barred" under 28 U.S.C. § 2401(b), Defendant's motion to dismiss is granted in its entirety, and Plaintiff's complaint is dismissed with prejudice.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 17) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED WITH PREJUDICE**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 21, 2023
       Albany, New York

Mae A. D'Agostino
U.S. District Judge